## Commonwealth, for Use and Benefit of Phillips, County Treasurer, et al. v. Tate et al.

(Decided Feb. 17, 1933.)

E. E. BELL and E. BERTRAM for appellants.

J. M. KENNEDY, J. E. STEPHENS and H. C. KENNEDY for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

G. P. Tate was the sheriff of Wayne county for the years 1926-1929. This action was brought by the commonwealth, for the use and benefit of Wayne county, the county board of education, etc., against Tate and his sureties on his bond on October 27, 1930. It was alleged in the petition that under an order of the fiscal court made on January 9, 1930, John R. Wilhite, as commissioner, had made a settlement with the sheriff and that settlement had been approved by the court, and that by this settlement it appears that Tate, as sheriff, owed the county $2,870.75 and owed the county board of education $6,120.57, subject to a credit of $1,666.78, leaving a balance of $4,453.79. It was alleged that these sums were unpaid and judgment was prayed therefor. Pending the action the fiscal court employed Cotton & Eskew, expert accountants, to go over the books and report the amount due by the sheriff. They filed a report showing that the balance due the county from the sheriff was $3,-908.50, and the balance due the school fund was $4,-982.33. Thereupon an amended petition was filed surcharging the settlement made by Wilhite as commissioner and praying judgment for the amount shown by the settlement made by Cotton & Eskew. Tate filed an answer denying the correctness of either of these settlements, or the figures upon which they were based. He employed Knight & Co., expert accountants, to go over the books and make a settlement of his accounts; they did this and filed a report showing that Tate had overpaid the county $3,992.50, and that he owed the school board $1,666.78. The case came before the court on these conflicting settlements and he referred the case

to J. W. Wesley, as special commissioner to report a settlement of the sheriff's accounts. He filed a report showing that Tate owed the county $996.40, and owed the schools $2,424.58. The circuit court approved the commissioner's settlement in a written opinion filed and entered judgment pursuant thereto. The plaintiffs appeal.

The assessment of property for taxation is originally made by the county tax commissioner. Ky. Stats., sec. 4042a-5. The board of county supervisors then go over his work making proper corrections. Ky. Stats., secs. 4115-4125. The county clerk then makes a recapitulation of the books as revised by the board, and files same with the State Tax Commission. The State Tax Commission has power to equalize taxation by fixing the assessment of all property at its fair cash value, and when it has completed its equalization of the assessments, it certifies its action to the county court. Ky. Stats., sec. 4114i-18. Ky. Stats., sec. 4128a-2, provides:

"When the State Tax Commission has completed the equalization of the assessment of the property in any county, it shall not later than June the first certify to the auditor of public accounts the total assessed value of the property in such county and the amount of taxes due from such county. The auditor of public accounts shall at once charge said amount to the sheriff of such county, and notify the county court clerk of such county of the amount of taxes due therefrom, and the county court clerk shall affix said certification to the tax books and enter it of record in the order book, and it shall be the sheriff's or collector's warrant for the collection of taxes."

Kentucky Statutes, sec. 4239a, provides that the county clerk shall make out from the record as above revised the book of tax bills "and shall take a receipt from the sheriff showing the number of tax bills and each in additional line, the total amount of tax due the state, county, and county school fund from all the tax bills in said book; said receipt shall be signed and acknowledged by the sheriff or collector before the county court clerk and filed before the county court and recorded in the order book of the county court in the same way and manner as now required by law in recording the official bond of the sheriff. The original

tax bill herein provided for shall be delivered by the sheriff to the taxpayer when said taxpayer has paid his tax in full.''

The rule as to how a settlement with the sheriff should be made is thus stated in Bush v. Board of Education, 238 Ky. 297, 308, 37 S. W. (2d) 849, 853:

> "When an action is instituted to charge the sheriff with a failure to pay over money to any fund, the first thing to be ascertained is the amount with which the sheriff was properly chargeable. That is shown by the records in the office of the county court clerk. These records are the recapitulation of the books of the county tax commissioner and the receipt executed by the sheriff to the county clerk and recorded in the office of the county clerk. These records must stand as correct, unless impeached by the one attacking their correctness. It may be shown that through fraud or mistake the recorded amount with which the sheriff is charged is inaccurate. Without pleading and proof showing that the amounts charged against the sheriff are inaccurate, they must stand as correct.''

This case was followed and approved in Livingston County v. Dunn, 244 Ky. 460, 468, 51 S. W. (2d) 450, 453, where the court, after approving the construction of the sections above referred to, added this:

> "One of the purposes of the statutes in providing this simple method of determining the taxes chargeable to the sheriff was to relieve the taxing units of the extraordinary cost of employing special accountants, which has been incurred in this case. If any errors were made by the county clerk in his preparation of the tax books when fixing the amount to be paid by a taxpayer or in deducting his exemptions, unless such errors are corrected by the tribunal clothed with authority to make such correction, within the time and in the manner and form provided by law, at the instance of the taxpayer or the sheriff, and the sheriff thereby exonerated, the sheriff is bound to account for and pay the county the amount of the taxes shown by the county clerk's tax books or his receipt therefor. Such correction may not be made in this action to surcharge his settlement.''

None of the settlements were made on the basis above indicated. The opinion of the circuit court also ignored this rule. On the return of the case to the circuit court it will be referred to the commissioner with directions to report a settlement of the sheriff's accounts on above basis. On the coming in of the report, it will be set over for exceptions and heard on the exceptions of either party to the report. The case involves a complicated account and can be best determined in this way.

One question much discussed by counsel arises on these facts: The state board one year added 30 per cent. increase on the assessment of personal property in the county, and made like raises in the other three years. On one side it is claimed that the exempt personal property should first be subtracted from the total assessment of personal property and the raise only calculated on the balance. On the other hand, it is claimed that the raise should be counted on the total amount of the personal property and that the value of the exempt property should be subtracted from the total of the personal property, plus the raise. This precise question was before the court and decided in the second case above cited. If a mistake was made in the assessment, it might have been corrected by the county court under section 4250, Kentucky Statutes, but if not corrected, as provided in that section, the sheriff is responsible for the amount that he receipts to the county clerk for; for under the statute it is the final assessment.

All other questions are reserved.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

The whole court sitting.